# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KAREN DIANE YOUNG, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION <br><br> No. 15-2286-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income benefits (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.   Background**

Plaintiff applied for SSI benefits, alleging disability beginning April 1, 2011. (R. 18, 306). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in finding that Plaintiff can stand or walk for six hours in a workday, and in failing to find

that peripheral neuropathy is a severe impairment in the circumstances of this case. She argues that the ALJ's findings are not supported by substantial evidence in the record. Finally, Plaintiff argues that the court should remand this case to the Commissioner for an immediate award of benefits.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision.

**II.    Discussion**

Plaintiff argues that the ALJ did not find Plaintiff's peripheral neuropathy a severe impairment and did not really address that condition. She argues that despite the ALJ's finding that Plaintiff's records do not document any reports to her doctors of difficulties walking, her treatment notes are "actually replete with instances where she mentioned problems with the Neuropathy [sic] in her feet and lower extremities." (Pl. Br. 6-7) (citing R. 197 (swollen legs), 198 (neuropathy, adjusting dosage of gabapentin, "Some of pain may be due to profound hypothyroidism"), 202 (numbness in feet, feet hurt on top), 203 (noting recent blood sugar over 900, ketoacidosis), 204 (rescheduled appointment, referred to emergency room, unable to register blood sugar on glucometer)). Plaintiff cites other treatment records containing neuropathy-related complaints and argues that "while these records do not specifically make note of the Plaintiff 'complaining of difficulty walking', [sic] as stated by the ALJ, common sense would tell one that if a person's feet are 'numb and painful', [sic] walking would be difficult." (Pl. Br. 7).

Plaintiff argues that the exact cause of pain and numbness in her feet–whether diabetic neuropathy or profound hypothyroidism–is irrelevant, and what matters is the

4

effect of pain and numbness on her ability to stand and/or walk. (Pl. Br. 8). She argues that the record evidence of pain, numbness, and swollen feet clearly provides "substantial evidence that the Plaintiff lacked the ability to stand and walk for six of eight hours, contrary to the ALJ's finding." Id.

Plaintiff points to the December 17, 2011 report of the consultative examination performed by Dr. Johnson, in which Dr. Johnson stated, "There is no history of ketoacidosis, hypoglycemia, coma, retinopathy, peripheral vascular disease, or nephropathy." (R. 205). Plaintiff argues that "[t]he events of April 6, 2011, represent an extreme ketoacidosis occurrence, and it was clear error on the part of the consultative physician to state that there was 'no history of ketoacidosis.' " (Pl. Br. 8) (quoting R. 205) (emphasis in Pl. Brief). She argues that the medical records "are actually replete with [Plaintiff's] description of pain and numbness in the feet which continuously caused her difficulty walking and/or standing," and "[w]hen the ALJ stated that the records 'do not contain any mention of [Plaintiff] complaining to her doctors about difficulty walking', [sic] he was simply wrong. Yet [the ALJ] clearly relied upon that error of judgment when he formulated his Residual Functional Capacity for light work." (Pl. Br. 9).

The Commissioner argues that the ALJ adequately accounted for Plaintiff's neuropathy, that he discussed her neuropathy when assessing RFC, and addressed the treatment notes discussing the examinations of Plaintiff's feet, and the report of the consultative examination in that regard. (Comm'r Br. 3-5). She argues that the record evidence supports the ALJ's determination in that regard, and it should be accepted

5

"notwithstanding evidence to the contrary." (Comm'r Br. 5) (citing <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1996) ( "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

She argues that the ALJ's decision is supported by the medical opinions of both Dr. Johnson, the consulting examiner, and Dr. Coleman, the state agency non-examining physician. (Comm'r Br. 6). She accepts that Dr. Johnson erred in stating that there was no history of ketoacidosis or neuropathy, but argues that error was harmless because Dr. Johnson's was merely a scrivener's error, because the ALJ independently considered and noted the episode of ketoacidosis, and because Dr. Coleman had considered Dr. Johnson's report, but nonetheless noted glucose levels ranging from 961 to 665 on April 6, 2011, and the ALJ had relied on Dr. Coleman's RFC assessment. <u>Id.</u> at 7-8. Finally, the Commissioner argues that the ALJ's determination is supported by his finding that Plaintiff's allegations of symptoms are not entirely credible. <u>Id.</u> at 8-9.

In her Reply, Plaintiff characterizes Dr. Johnson's examination as a "very sloppy consultative examination," and implies that this allegedly sloppy examination should be held against the Commissioner. (Reply 1). She argues that Dr. Johnson "in fact noted that 'there is no history of . . . neuropathy,' " and that the Commissioner's arguments suggesting harmless error are without merit. <u>Id.</u> at 2. She reiterates her argument that, despite the ALJ's contrary finding, she "testified, and has commented to her treating physicians, that she is generally capable of walking only about as far as from her bedroom

to her living room due to the pain, numbness, and swelling in her feet and ankles." Id. She points out once again that the ALJ did not include peripheral neuropathy in his list of her impairments, that he apparently relied erroneously on Dr. Johnson's report in finding that Plaintiff did not tell her treating doctors of any difficulties walking, and that the Commissioner's arguments in support of the decision below "fly in the face of common sense," because "the medical records are filled with instances where her blood sugars were completely out of control and were extremely high, with many instances where her blood sugar levels were between 600 and 1000, with the highest blood sugar reading contained in the record being the occasion of the Plaintiff's hospitalization in April of 2011 when her blood sugar level was 976." (Reply 3) (citing R. 314-15).

Plaintiff argues that the record will not support the ALJ's finding that Plaintiff is capable of a range of light work, but requires a finding that she is limited to sedentary work, and in the circumstances of the case, such a finding necessitates a finding that Plaintiff is disabled. Id. at 4. Therefore, she argues that this case should be remanded for an immediate award of benefits. Id.

### A.    The ALJ's Findings

At step two of the sequential evaluation process, the ALJ found that Plaintiff has severe impairments of diabetes, hypothyroidism, obesity, right wrist pain, shoulder pain, hip pain, minimal spondylosis in her lumbar spine, and depression. (R. 20). He explicitly noted that "[e]ach of these impairments and their effects on the claimant's work abilities are discussed in further detail below," and that he had "considered all of claimant's

impairments and all of the record when assessing claimant's residual functional capacity as set out below." Id.

In assessing RFC, he noted that Plaintiff "testified that her worst problem was her neuropathy," and that swelling and numbness in her feet make it difficult to walk. (R. 22). He found that her allegations of symptoms resulting from her impairments "are not entirely credible for the reasons explained in this decision." Id. He noted that Plaintiff experienced an episode of ketoacidosis in April 2011 which resolved quickly with treatment. Id. He also noted that thereafter Plaintiff reported that her feet hurt and her toes were going numb, but that examination revealed good sensation in her feet, and that the "sensation in her feet was found to be normal on most of her subsequent examinations as well," that, with medication, she had numbness in her feet only occasionally by January 2012. (R. 22-23) (citing Exs. 1F/4; 11 F/3, 5, 9, 13). He found that Plaintiff's diabetes was noted to be stable and controlled in October 2012. Id. (citing Ex. 11F/1).

The ALJ also discussed Plaintiff's allegation regarding swollen feet:

> Although the claimant alleged that her feet also swelled, she did not have swelling upon most of her examinations. See, e.g. (Ex. 1F/4,6,8,13; 11F/1,5,9,13,15 [(R. 193, 195, 197, 202, 280, 284, 288, 292, 294)]). She had swelling in her right ankle in January 2012 and an x-ray showed some soft tissue swelling in that ankle, but she reported that she had injured that ankle many times (Ex. 11F/4 [(R. 283)]). Although the claimant reported difficulty walking, her records do not document that she told her treating doctors about any such problems (Exs. 1F; 11F [(R. 190-204, 280-95)]).

(R. 23).

> The claimant underwent a physical consultative examination in December 2011 with Dr. Johnson (Ex. 2F [(R. 205-08)]). His [sic] examination

8

revealed that the claimant had ten pounds of grip strength in his [sic] right hand and fifteen pounds of grip strength with his [sic] left. Her dexterity was preserved. She had reduced range of motion in her back, her right shoulder, her right hip and her knees. She had decreased sensation to her right thigh and calf and reduced strength throughout. However, she had only mild difficulty with orthopedic maneuvers (Ex. 3F/3[1]).

(R. 23).

The ALJ summarized Dr. Coleman's opinion as a non-examining source, and explained that he had accorded great weight to that opinion because Dr. Coleman is an acceptable medical source, because Dr. Coleman reviewed most of the plaintiff's records, and because Dr. Coleman's opinion is consistent with the medical records. (R. 23). He explained that he based the RFC he assessed "on Dr. Coleman's opinions," but that he gave Plaintiff the benefit of the doubt and concluded "that she can only occasionally balance and never climb ladders, ropes or scaffolds." (R. 24). He also explained that "[d]espite Dr. Coleman's opinion, because Dr. Johnson found that the claimant had reduced grip strength on the right, I find the claimant can only frequently, as opposed to constantly handle, defined as gross manipulation, with her right hand." Id.

Finally, the ALJ explained that he found Plaintiff's "statements were less than credible" for three reasons. Id. There are inconsistencies between Plaintiff's statements to her doctors, and her statement in applying for disability benefits. Id. Plaintiff's treatment history is inconsistent with allegations of disabling symptoms. (R. 25). And,

---

[1]This citation is apparently a misprint. Dr. Johnson's report appears in the record as Exhibit 2F, and on page three of that report, she explains that Plaintiff had mild difficulty with all orthopedic maneuvers. (R. 207).

Plaintiff's poor work history suggests that her failure to work is due to reasons other than her impairments. (R. 25).

**B.    Analysis**

Plaintiff has shown no error in the ALJ's RFC assessment in this case. Specifically, she has shown no error in the ALJ's consideration of her neuropathy symptoms, or his finding that she can stand or walk for six hours in an eight hour workday.

Plaintiff's argument that the ALJ erred because he did not find peripheral neuropathy to be a severe impairment in the circumstances of this case is merely a "red herring" tending to confuse the issue. As the Stedman's Medical Dictionary explains, diabetic neuropathy is "a generic term for any diabetes mellitis-related disorder of the peripheral nervous system, autonomic nervous system, and some cranial nerves." Stedman's Medical Dictionary 1204 (26th ed. 1995). It goes on to explain that peripheral neuropathy "causes a dulling of the sensations of pain, temperature, and pressure, especially in the lower legs and feet." Id. As Plaintiff acknowledges, the ALJ found that Plaintiff has severe impairments including diabetes and hypothyroidism. (R. 20); see also (Pl. Br. 6). Moreover, although one of Plaintiff's treatment notes records that "some of pain may be [secondary to] profound hypothyroidism," in context, even that note recognizes that the predominant cause of the neuropathy symptoms is diabetes mellitis. (R. 198). That the ALJ did not include peripheral neuropathy in his list of impairments is not surprising. The neuropathy is a symptom caused by diabetes (and possibly

contributed to by hypothyroidism), and the ALJ listed diabetes and hypothyroidism as the first two of Plaintiff's severe impairments. And, as Plaintiff admits, it is really irrelevant whether the exact cause of her neuropathy is diabetes or hypothyroidism.

Moreover, Plaintiff asserts that "the ALJ did not really address the Plaintiff's Neuropathy [sic] other than to recognize the fact that the Plaintiff's testimony was to the effect that Neuropathy [sic] was her worst problem, and [to the effect] that the swelling and numbness in her feet made it difficult to walk." (Pl. Br. 6). While it is true that the ALJ recognized Plaintiff's testimony regarding neuropathy, swelling, and numbness, as noted above, the ALJ also noted that most examinations of Plaintiff's feet revealed normal sensation, that she had numbness in her feet only occasionally by January 2012, and that Plaintiff's diabetes was noted to be stable and controlled in October 2012. He found that Plaintiff did not have swelling in her feet upon most of her examinations, and that the swelling in her right ankle in January 2012 was attributable by her report to the fact that she had injured that ankle many times.

Finally, the ALJ found that although Plaintiff testified of difficulty walking, the treatment records do not document that she told her healthcare providers about any such problems. Plaintiff assert that this finding is erroneous because the record is "replete with instances where she mentioned problems with the Neuropathy [sic] in her feet and lower extremities," including numbness, pain, and swelling. (Pl. Br. 6-7). However, these are the very factors specifically addressed by the ALJ, and Plaintiff does not point to error in

11

the ALJ's summary of the evidence. And, the court's review reveals that the evidence supports the ALJ's evaluation.

Plaintiff admits that the "records do not specifically make note of the Plaintiff 'complaining of difficulty walking,' " but argues that "common sense would tell one that if a person's feet are 'numb and painful,' walking would be difficult." (Pl. Br. 7). Plaintiff's argument ignores the point of the ALJ's decision, suggesting that Plaintiff's feet are not as numb and painful as she reported, which as the court noted above is supported by the record evidence. Moreover, regardless of Plaintiff's view of "common sense," reports of numbness, pain, and swelling are not the same as reports of difficulty walking. The ALJ is correct that Plaintiff did not report difficulty walking to her treatment providers, and as the ALJ noted, Plaintiff's reports of pain, numbness, and swelling which are contained in the record do not support the severity of limitation suggested by Plaintiff's argument.

Plaintiff's argument of error in Dr. Johnson's report is merely another "red herring" tending to confuse the issue here. First, even if the court accepted Plaintiff's argument that Dr. Johnson erred, that fact is irrelevant to the issue before the court. The court's duty is to review the decision of the Commissioner below, not to serve as a super referee to ensure that all of the individuals who have dealt with Plaintiff's healthcare or her application for disability benefits have committed no errors in their handling of the case. As noted above, the ALJ recognized Plaintiff's episode of ketoacidosis in April 2011, and he said nothing about Dr. Johnson's report in that regard. The ALJ

12

summarized only the examination findings from Dr. Johnson's report, and he explained that the RFC he assessed was based on Dr. Coleman's opinion, except that he reduced Plaintiff's ability to handle with her right hand because of Dr. Johnson's finding that she had reduced grip strength on the right. (R. 23-24).

Moreover, the court does not accept Plaintiff's argument that Dr. Johnson erred. To be sure, Dr. Johnson's report states "[t]here is no history of ketoacidosis" (R. 205), whereas the record repeatedly reveals, as the ALJ found, that Plaintiff had an episode of ketoacidosis on April 6, 2011. However, the statement at issue appears in the section of Dr. Johnson's report titled "Chief Complaints," which is reproduced in its entirety here:

> **CHIEF COMPLAINTS:** "Joint discomforts, diabetes, depression."
>
> The patient has an eight month history of diabetes. There are no associated symptoms. The patient is on Lantus 42 units BID and Humalog on a sliding scale. The patient reports numbness in the feet on Neurontin management. <u>There is no history of ketoacidosis, hypoglycemia</u>, coma, retinopathy, peripheral vascular disease, <u>or nephropathy</u>. The patient's maximum weight was 257 pounds. Weight one year ago is unknown, and the current weight is 257 pounds. The patient does do home glucose monitoring. The patient's average fasting blood sugars are 120. Hemoglobin A1C is unknown. The patient does not report hypertension or hypertensive management.
>
> The patient reports a history of joint pains of the back and neck dating back 20 years, shoulder and hip the last three years, and generalized leg pain with a history of neuropathy. The patient reports a history of a motor vehicle accident in 2008 injuring the back and neck. The fell down [sic] in 2008 injuring the right shoulder and hip. The back pain radiates to the right leg. It is not aggravated by coughing and sneezing. There is no history of physical therapy, MRI, epidural injections, chiropractic management, or TENS unit use. The patient does not make use of an assistive device. The patient wakes up three times per night due to discomfort. The patient reports morning stiffness. The patient has worsening symptoms with

13

weather changes. Reports that moist heat does not help alleviate symptoms. The patient is on no medication for this condition.

(R. 205) (emphases added). In context, the only reasonable conclusion from a fair reading of this section of Dr. Johnson's report, is that it is a summary of the medical information that Plaintiff reported to Dr. Johnson. All of the information contained therein is information that a healthcare provider would ask a patient, and would expect her to tell the provider if she did not know. That fact is reflected in the report that "[h]emoglobin A1C is unknown." (R. 205). And, some of the information is that which only the patient would be expected to know, i.e., weight, home glucose monitoring, past medical history, and pain. While it is erroneous, there is little doubt but that Plaintiff reported to Dr. Johnson that she did not have a history of ketoacidosis or hypoglycemia.

Both Plaintiff and the Commissioner assert that Dr. Johnson reported that there was no history of neuropathy. (Reply 2); (Comm'r Br. 7). However, that assertion is simply not borne out by Dr. Johnson's report. Both in the section of her report quoted above, and in her "Conclusions," Dr. Johnson specifically noted a history of neuropathy. (R. 205, 207). The court notes that Dr. Johnson's report, as quoted above, states that there is no history of <u>nephropathy</u> (or kidney disease), and suggests that it is a potential misreading of this statement that led the parties to make such an assertion. (R. 205).

Finally, in her Reply Brief, Plaintiff asserts that the record is "filled with instances where her blood sugars were completely out of control and were extremely high, with many instances where her blood sugars were between 600 and 1000." (Reply 3). In

14

making this assertion, Plaintiff's counsel simply mischaracterizes the record. In her hospitalization resulting from the episode of ketoacidosis, the records reveal that Plaintiff had blood sugars over 600. (R. 204, 243, 245, 247). Beyond that, the court's review of the record reveals only two records where blood sugar was reported over 300. (R. 195, (October 4, 2011, glucose 329), 193 (November 8, 2011, glucose 302)). Thereafter, blood sugars are recorded many times in the record, mostly in the 100's, and the highest recorded is 236. (R. 191, 280, 282, 284, 286, 288, 290, 292). On October, 28, 2012, the record specifically records that blood sugar levels are stable and controlled. (R. 280).

The court finds no error in Dr. Johnson's report attributable to Dr. Johnson, and it certainly finds no error in the decision below because of Dr. Johnson's report.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 19th day of February 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**